ELECTRONIC CITATION:  2011 FED App. 0014P (6th Cir.)
File Name:  11b0014p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:  SOUTHEAST WAFFLES, LLC, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| SOUTHEAST WAFFLES, LLC, | ) |
| | ) |
| Appellant, | )   No. 11-8012 |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| TREASURY/ INTERNAL REVENUE | ) |
| SERVICE, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee.
Bankruptcy Case No. 08-07552; Adversary Case No. 10-00476.

Argued:  November 1, 2011

Decided and Filed:  November 30, 2011

Before:  BOSWELL, HARRIS, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Glenn B. Rose, HARWELL HOWARD HYNE GABBERT & MANNER, P.C.,
Nashville, Tennessee, for Appellant.  Andrew C. Strelka, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Glenn B. Rose, Barbara D.
Holmes, Renee M. Bacon, HARWELL HOWARD HYNE GABBERT & MANNER, P.C.,
Nashville, Tennessee, for Appellant.  Andrew C. Strelka, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

MARCI B. McIVOR, Chief Bankruptcy Appellate Panel Judge.

Southeast Waffles, LLC ("Debtor") appeals an order of the bankruptcy court granting a motion to dismiss its adversary complaint against the United States Department of Treasury/Internal Revenue Service ("IRS") pursuant to Federal Rule of Civil Procedure 12(b)(6). In its adversary complaint, the Debtor sought avoidance and recovery of noncompensatory penalty payments made to the IRS pursuant to 11 U.S.C. §§ 548 and 550, as well as the Tennessee Uniform Fraudulent Transfer Act, Tenn. Code Ann. § 66-3-301, *et seq.* For the reasons that follow, the Panel affirms the bankruptcy court's order dismissing the Debtor's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF ISSUE**

The issue presented by this appeal is whether the bankruptcy court erred in dismissing the Debtor's adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**JURISDICTION AND STANDARD OF REVIEW**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). An order dismissing an adversary complaint under Federal Rule of Civil Procedure 12(b)(6) is a final, appealable order. *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 292 (B.A.P. 6th Cir. 2008).

The bankruptcy court's order dismissing the Debtor's complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) is reviewed de

2

novo. "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

**FACTS**

Southeast Waffles, LLC ("Debtor") was formed in 1999, for the purpose of purchasing and operating as a franchisee of Waffle House restaurants. The Debtor engaged in business as a Waffle House franchisee until September 30, 2009. As of August 25, 2008, the Debtor operated approximately 113 Waffle House restaurants with locations in Tennessee, Alabama, Mississippi, and Kentucky.

From 2005 to 2008, the Debtor periodically failed to make all federal income tax withholding, social security, and unemployment payments due to the IRS and to timely file returns related to such taxes. As a result of these failures, the IRS assessed penalties in excess of $1.5 million against the Debtor. During the time period of 2005 to 2008, the Debtor made several payments to the IRS that were applied by the IRS to the penalties. The payments applied to penalties totaled $637,000.

On August 25, 2008, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On September 30, 2009, the bankruptcy court confirmed the Debtor's First Amended Plan of Reorganization. Pursuant to the confirmed plan, Gary M. Murphey ("Murphey") was appointed Liquidating Agent for the Debtor. Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtor operated its business and managed its properties as a debtor-in-possession until substantially all of its assets were sold in accordance with its confirmed plan, effective October 1, 2009.

On August 24, 2010, the Debtor filed an adversary complaint against the IRS asserting that penalty payments of $637,000, made in the four years preceding the petition date, constituted constructive fraudulent conveyances under 11 U.S.C. § 548(a)(1)(B) and Tenn. Code Ann. §§ 66-3-301 *et seq*. The complaint specifically alleged that: (1) audits performed by a certified public

3

accounting firm reflected that since June 2005, the Debtor's liabilities exceeded its assets; (2) the Debtor owed unsecured debts to one or more creditors, including amounts due on a note payable to the person who sold the business to the Debtor in 1999; (3) periodically throughout the period from 2005 until it filed its petition for relief, the Debtor failed to make all tax payments due to the IRS and failed to file timely returns relating to those taxes; (4) failure to pay all taxes due and file timely returns resulted in the imposition of large penalties against the Debtor by the IRS; (5) payment of the penalties assessed provided no value to the Debtor because they did not decrease the amount actually due from the Debtor for the taxes; (6) the Debtor did not receive reasonably equivalent value in exchange for the payment of penalties; (7) at the time the Debtor made each payment it was engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction or believed or reasonably should have believed it would incur debt beyond its ability to pay as they became due; and (8) the Debtor was insolvent at the time it made most of the penalty payments. The complaint further sought recovery of the payments from the IRS pursuant to 11 U.S.C. § 550(a)(1).

In response to the Debtor's complaint, the IRS filed a motion to dismiss the complaint for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In its motion, the IRS asserted that the Debtor's complaint failed to state a plausible claim because the Debtor received reasonably equivalent value via a dollar-for-dollar satisfaction of an antecedent debt owed to the IRS.

In opposition to the IRS's motion to dismiss, the Debtor filed a motion for summary judgment and declaration of Murphey, the Debtor's liquidating agent. In addition to declaring to the facts asserted in the Debtor's adversary complaint, Murphey's declaration explained that the payment of the penalties at issue provided no value to the Debtor because, in part, they did not decrease the amount due from the Debtor for the unpaid taxes or reduce the amount of interest accruing on the taxes in any way. Additionally, Murphey's declaration explained that the Debtor did not designate the periodic payments made to the IRS in the four years preceding the commencement of the bankruptcy case. Therefore, the IRS applied these undesignated payments to the penalties. The IRS

4

opposed the Debtor's motion for summary judgment; however, it did not submit any supporting affidavits, nor did it dispute any of the facts set forth in the Debtor's complaint.

On January 11, 2011, the bankruptcy court heard argument on both the motion to dismiss and the motion for summary judgment. At the conclusion of the hearing, the bankruptcy court orally stated its ruling. Holding that "as a matter of law, [] the dollar-for-dollar payment of noncompensatory tax penalties is reasonably equivalent value," the bankruptcy court granted the IRS's motion to dismiss and denied the Debtor's motion for summary judgment.[1] In so holding, the bankruptcy court explained that:

> I do not believe it is necessary for the Bankruptcy Court to have a fact-finding hearing to go further than I just went in order to find reasonably equivalent value when it is not disputed that the debt was legitimately due for the penalties from this debtor, and that there's no evidence of fraud or other misconduct or anything else that would throw into question whether the Government accurately and correctly, according to its regulations and its statutes, credited the debtor, dollar for dollar, for the penalty debt when it took the debtor's money and applied it to penalties.

(Transcript of hearing, Jan. 11, 2011, at 33-34.)

On January 14, 2011, the court entered a written order reflecting its ruling. The Debtor filed a timely notice of appeal on January 27, 2011.

---

[1]The court also partially granted Debtor's motion for summary judgment. In its motion to dismiss the complaint, the IRS asserted that some of Debtor's claims were barred by the applicable statute of limitations. Therefore, Debtor moved for summary judgment on the ground that the applicable statute of limitations for fraudulent transfer actions had not expired. The court agreed and granted summary judgment as to that issue alone. At oral argument, counsel for the IRS conceded that he had been mistaken on that issue. The statute of limitations issue is not before the Panel.

**DISCUSSION**

1.      Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) is applicable to motions to dismiss in adversary proceedings.  *See* Fed. R. Bankr. P. 7012(b) (incorporating by reference Fed. R. Civ. P. 12(b)(6)). Rule 12(b)(6) permits a defendant to move for dismissal of a complaint prior to filing a responsive pleading.[2]  Such a motion challenges the legal theory of the complaint, not the sufficiency of any evidence which may be discovered.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).  "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail . . . ."  *Id*. (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832 (1989)).  A complaint survives a Rule 12(b)(6) motion if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level . . ., on the assumption that all the allegations in the complaint are true  (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).  A complaint need only provide "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  In the face of a Rule 12(b)(6) motion, a complaint must be construed in the light most favorable to the plaintiff, the allegations of the complaint must be

---

[2]Rule 12 provides, in pertinent part:

> (b) **How to Present Defenses.**  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:
>
> . . .
>
> (6) failure to state a claim upon which relief can be granted . . . .
>
> . . .
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

6

accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Tam Travel, Inc. v. Delta Airlines, Inc.* (*In re Travel Agent Comm'n Antitrust Litig.*), 583 F.3d 896, 903 (6th Cir. 2009). " '[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.' " *Id.* (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). The court need not, however, "accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegation will not suffice." *Id.* (internal citations and quotations omitted). The issue before the Panel is whether the Debtor's complaint against the IRS was properly dismissed within the constraints of Rule 12(b)(6).

2.      Fraudulent Transfer - 11 U.S.C. § 548(a)(1)(B) and Tennessee Code Ann. §§ 66-3-301, *et seq.*

Debtor alleges that the prepetition partial payment of its tax liability constitutes an avoidable fraudulent transfer because the IRS applied the payment to the penalty portion of the liability rather than the tax and interest. Debtor's theory is that since the penalty portion of its tax liability was not for actual pecuniary loss, it did not receive reasonably equivalent value when the IRS applied its prepetition payment to the penalty rather than to the tax and interest. The issue before the Panel is whether Debtor's argument can be shoehorned into a cause of action under 11 U.S.C. § 548 of the Bankruptcy Code or Tenn. Code Ann.§ 66-3-304(b).

Pursuant to 11 U.S.C. § 548(a)(1), there are two categories of fraudulent transfers made or obligations incurred that may be avoided by a trustee in bankruptcy - those made with *actual fraudulent intent* and those made with *constructive fraudulent intent*. *See* 11 U.S.C. § 548(a)(1)(A), (B). In this appeal, Debtor does not assert a claim of actual fraud under § 548(a)(1)(A), but argues that the penalty payments Debtor made to the IRS in the amount of $637,000, were for less than reasonably equivalent value, and therefore constituted constructively fraudulent transfers in violation of 11 U.S.C. § 548(a)(1)(B) and the Tennessee Uniform Fraudulent Transfer Act ("TUFTA"), Tenn. Code Ann. § 66-3-301, *et seq.* Section 548(a)(1)(B) of the Bankruptcy Code states in pertinent part:

(a)(1)   The Trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . .

(B)(i) *received less than a reasonably equivalent value* in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1)(B) (emphasis added).

Similarly, under the TUFTA, to recover under a constructive fraud theory, the debtor must prove that it transferred an interest in property for less than reasonably equivalent value in exchange for the transfer, and that it

(A) was engaged or was about to engage in a business or transaction for which [its] remaining assets . . . were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due.

Tenn. Code. Ann. § 66-3-305(a)(2)(A) and (B).[3]

In order to survive a Rule 12(b)(6) motion to dismiss, for failure to state a claim under § 548(a)(1)(B), the complaint

must contain sufficient facts plausible on their face that establish that the debtor: (1) made a transfer within two years of the bankruptcy filing; (2) received less than reasonably equivalent value in exchange

---

[3]The statute of limitations for fraudulent transfers is four years pursuant to Tenn. Code Ann. § 66-3-305.

8

for the transfer; and (3) was insolvent on the date the transfer was made or became insolvent as a result of the transfer.

*Russell v. Little* (*In re Anderson*), Bankr. No. 10-50757, Adv. No. 10-5081, 2010 WL 4959948, at * 2 (Bankr. E.D. Tenn. Dec. 1, 2010) (unpub.).

The second prong of the inquiry, whether the debtor received less than "reasonably equivalent value," is the only issue before the Panel. Therefore, the Panel must determine under Rule 12(b)(6), whether the Debtor's complaint contains sufficient facts plausible on their face to establish that it received less than "reasonably equivalent value." In order to make this determination, the Panel must first examine how these terms are defined.

3. <u>Debtor received reasonably equivalent value when the IRS applied Debtor's payments to the penalty portion of its liability</u>

The term "value" is defined in the Bankruptcy Code and the TUFTA to include the satisfaction of an antecedent debt. *See* 11 U.S.C. § 548(d)(2)(A); Tenn. Code. Ann. § 66-3-304(a). Neither the Bankruptcy Code nor the TUFTA defines "reasonably equivalent value."[4] Generally, the question of whether reasonably equivalent value has been given for a transfer of property is a question of fact. *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), No. 05-5744, 2006 WL 2380887 *3, 196 F. App'x 337, 341 (6th Cir. Aug. 17, 2006) (unpub.) (whether reasonably equivalent value was received in exchange for payment is question of fact); *Staats v. Butterworth Props., Inc.* (*In re Humble*), No. 00-3572, 2001 WL 1006148, *1, 19 F. App'x 198, 200 (6th Cir. Aug. 20, 2001) (unpub.) (analysis of reasonably equivalent value is "based upon the facts and circumstances of each particular case"); *Leibowitz v. Parkway Bank & Trust Co.* (*In re Image Worldwide, Ltd.*), 139 F.3d 574, 576 (7th Cir. 1998) (whether "reasonably equivalent value" was received is a question of fact); *Gaudet v. Babin* (*In re Zedda*), 103 F.3d 1195, 1206 (5th Cir. 1997) ("Whether a transfer is made for a reasonably equivalent value is, in every case, largely a question of fact."). "The date for

---

[4]With the exception of Tenn. Code Ann. § 66-3-304(b) related to a "regularly conducted, noncollusive foreclosure sale . . . ."

determining reasonable equivalence is the date of the transfer." *In re Wilkinson*, 196 F. App'x at 342.

While generally speaking, what constitutes reasonably equivalent value is a fact question, this case presents an issue of first impression in the Sixth Circuit about how value is calculated when the transfer is a payment of a tax obligation owed to the IRS. The resolution of this issue is purely a question of law and requires no further factual development given the facts stipulated to by the parties in the bankruptcy court.

The issue squarely before this Panel is whether Debtor received less than reasonably equivalent value when the IRS applied prepetition payments made by Debtor to the penalty portion of the tax liability. Debtor argues that it received "zero" value for the payment when the IRS applied Debtor's payments to the penalty portion of the liability rather than applying the payment to the tax or interest portion of the liability. Debtor then argues that because it received "zero" value for the payment, the transfer (payment) must be avoided as a fraudulent transfer.

3.(a). <u>Debtor received reasonably equivalent value because its prepetition payment reduced its total tax liability.</u>

There is no legal authority to support Debtor's argument that payments made and applied to tax penalties have "zero" value. Debtor's argument is incorrect because it is based on the assumption that penalties are not an integral part of a taxpayer's liability. Provisions of the Internal Revenue Code provide guidance and support for the conclusion that penalties *are* an integral part of the tax liability. Under § 6671 of the Internal Revenue Code entitled "Rules for application of assessable penalties," subsection (a) states that "penalties and liabilities . . . shall be assessed and collected *in the same manner as taxes*." 26 U.S.C.A. § 6671(a) (emphasis added). Moreover, "*any reference in this title to 'tax'* imposed by this title *shall be deemed also to refer to the penalties* and liabilities provided by this subchapter." *Id*. (emphasis added). Therefore, for the purpose of assessing and collecting penalties, the IRS does not make a distinction between the "underlying tax"

10

debt and the "penalty" portion of the liability. Payment of any portion of the tax liability reduces a taxpayer's tax liability dollar for dollar.

The penalty portion of a taxpayer's liability is an integral part of the tax debt, and a payment of the penalty portion reduces dollar for dollar the taxpayer's liability. Therefore, the taxpayer receives equivalent value when a payment is applied to the penalty portion of the liability. There is considerable case law holding that a dollar for dollar reduction in debt is sufficient to establish equivalent value. *See, e.g.*, *In re Wilkinson*, 196 F. App'x at 343 (debtor's payment to a third party on behalf of creditor in exchange for dollar for dollar reduction in creditor's debt considered "reasonably equivalent value"); *Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir. 2008) ("payment of the accrued interest constituted 'dollar-for-dollar forgiveness of a contractual debt,' which is 'reasonably equivalent value.'"); *Official Comm. of Unsecured Creditors of Propex Inc. v. BNP Paribas* (*In re Propex Inc.*), 415 B.R. 321, 324 (Bankr. E.D. Tenn. 2009) (debtor received "reasonably equivalent value" because the payment reduced the principal balance of the debt dollar for dollar); *Daly v. Fusco* (*In re All-Type Printing, Inc.*), 274 B.R. 316 (Bankr. D. Conn. 2002) (payment against debt for retirement benefits was dollar-for-dollar debt satisfaction and constituted "reasonably equivalent value"). Prepetition, Debtor's payment reduced its tax liability dollar for dollar. Therefore, Debtor received reasonably equivalent value, and there is no fraudulent transfer.

3.(b).  <u>Neither the Debtor nor the bankruptcy court can compel the IRS to allocate a payment to principal and interest.</u>

Since the penalty is an integral part of the tax, a question arises as to whether a taxpayer can *require* the IRS to apply a payment to the tax and interest portion of the liability rather than the penalty portion of the liability. Under the Internal Revenue Code, penalties are assessed by the IRS when a taxpayer fails to file tax returns or fails to pay income taxes on time. *See* 26 U.S.C.A. § 6651. Penalties are *mandatory* unless the taxpayer can show "that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C.A. § 6651(a)(2); *See also United States v. Boyle*, 469

11

U.S. 241, 243, 105 S. Ct. 668, 689 (1985). [5] Once a penalty has been assessed and the taxpayer makes payments on his tax liability, the IRS has the power to apply such payments in any manner the IRS wishes, unless the taxpayer designates otherwise.[6] Specifically, under IRS Revenue Procedure 2002-26,

> where additional taxes, penalty, and interest for one or more taxable periods have been assessed . . . and the taxpayer does not provide specific written directions as to the application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest.

Rev. Proc. 2002-26, 2002-15 I.R.B. 746, 2002-1 C.B. 746, 2002 WL 545245 (IRS RPR). In this appeal, it is undisputed that Debtor did not designate payments be applied in any particular manner. Therefore, the IRS had the right under its procedures to apply the payments made by Debtor in any way it saw fit. *See Stevenson v. IRS* (*In re Diamond Dismantling, Inc.*), 305 B.R. 453, 455 (Bankr. E.D. Mich. 2003) (citing *Kinnie v. United States*, 994 F.2d 279, 286 (6th Cir. 1993)).

A taxpayer who is not in bankruptcy cannot compel the IRS to allocate payments. Appellant appears to be arguing however, that the bankruptcy court has the authority to compel the IRS to allocate payments to the tax and interest rather than penalty. Appellant's argument that the IRS's application of this prepetition payment to the penalty is an avoidable transfer is a back door route to requiring the bankruptcy court to order the IRS to allocate the payment to tax and interest.

Several courts, including the Supreme Court, have addressed the issue of the bankruptcy court's authority to order the IRS to reallocate payments. *See United States v. Energy Resources Co.*,

---

[5]This is not an issue in this appeal since Debtor is not claiming that its failure to pay was due to excusable neglect or that there was a lack of willful neglect.

[6]This is "a long-standing IRS policy" that applies only to *voluntary* payments. *United States v. Pepperman*, 976 F.2d 123, 127 (3d Cir. 1992). Taxpayers may not designate the application of *involuntary* tax payments. *Id*. *Involuntary* payments have been defined as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Id*.

495 U.S. 545, 549, 110 S. Ct. 2139 (1990) (holding that "a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan."). *But see IRS v. Kaplan Bldg. Sys., Inc.* (*In re Kaplan*), 104 F.3d 589, 598 (3d Cir. 1997)(distinguishing the facts of *Energy Resources* from the facts in *Kaplan* and holding that even "the broad powers granted to the bankruptcy court under section 105 are insufficient alone to authorize a *retroactive* allocation of pre-petition tax payments."); *Gerwer v. Salzman* (*In re Gerwer*), 253 B.R. 66, 71 (B.A.P. 9th Cir. 2000) (finding that the "narrow exception of *Energy Resources* is not implicated" in a Chapter 7 case). Unlike the instant appeal, these cases involve postpetition tax payments made by the debtor and the ability of the bankruptcy court to order the IRS to reallocate those payments to trust-fund liabilities.[7] Therefore, these cases are distinguishable on their facts and are inapplicable to the instant appeal.

The Bankruptcy Code does provide bankruptcy courts with some authority to determine the *amount* of a tax liability. Under the Bankruptcy Code, the bankruptcy court has equitable power to hear and determine the amount or legality of any tax claim whether or not the tax, fine, penalty or addition to tax has been paid, previously assessed or contested. 11 U.S.C. § 505(a)(1). However, Debtor does not contest the legitimacy of the prepetition penalties assessed by the IRS. Therefore, § 505(a)(1) is not applicable to this appeal. Debtor cites no other law which would support an argument that the bankruptcy court has the authority, under the guise of avoiding a prepetition payment, to compel the IRS to allocate payments in a manner dictated by the taxpayer.

The Internal Revenue Code requires that penalties be assessed when tax returns are not filed, or taxes are not paid. Revenue Procedure 2002-26 states that where the taxpayer does not designate how a given payment should be applied, the Service has the authority to apply such payment in a manner that "will serve its best interest." There is no legal authority to support the notion that the

_____

[7]Trust fund taxes refer to the employees' share of FICA and FUTA taxes required to be withheld by the employer and held in trust for the federal government pursuant to 26 U.S.C. § 7501(a). Under 26 U.S.C. § 6672, the IRS may collect unpaid trust fund taxes directly from the employer's officers or employees who are responsible for collecting the tax. These people are referred to as "responsible persons."

bankruptcy court has authority to disregard the Internal Revenue Code. Thus, Debtor's argument that the bankruptcy court has the authority to compel the IRS to reallocate payments must fail. If the bankruptcy court cannot compel the allocation of payments, the prepetition allocation of Debtor's payments was appropriate and Debtor received equivalent value because the payments reduced its total tax liability.

4.       <u>The application of a tax payment to a noncompensatory penalty assessed by the IRS is not a fraudulent transfer.</u>

There is no dispute that a tax penalty is not compensation for actual pecuniary loss. *Bair v. Ohio Dep't of Taxation* (*In re Bair*), 302 B.R. 564 (Bankr. N.D. Ohio 2003); *Bates v. United States* (*In re Bates*), 974 F.2d 1234 (10th Cir. 1992). Debtor argues that because the penalty is noncompensatory, the application of the payment to the penalty portion of the liability should be avoided. There is no case law to support Debtor's position that noncompensatory penalties assessed by the IRS may be found in certain circumstances to be fraudulent conveyances. In a case relied upon by Debtor, *In re Standard Johnson Co., Inc.*, 90 B.R. 41 (Bankr. E.D.N.Y. 1988), the court addressed whether the IRS could claim prepetition penalties assessed against the debtor as a *priority* claim. The bankruptcy court concluded that the penalties assessed by the IRS were not entitled to priority, and stated that:

> [T]he penalty assessed by the IRS *might* be subject to avoidance by the debtor. Since the government's lien constitutes a transfer under 11 U.S.C. § 101(50), to the extent that the debtor did not receive reasonably equivalent value in exchange for that portion of the obligation representing penalties wholly unrelated to any actual pecuniary loss suffered by the government, it might be avoidable under § 548(a)(2) or other applicable state law. And to the extent that the lien was perfected within the 90 days prior to the date the petition was filed, it might be avoidable under § 547. However, in view of the debtor's failure to raise these issues, we need not address them at the present time.

*Id*. at 44-45 (footnote omitted) (emphasis added). The bankruptcy court in this case correctly dismissed the above statements as "musings" of the bankruptcy court with no precedential value of

14

any kind. (Transcript of hearing, Jan. 11, 2011, p. 36.)  Since the court in *Standard Johnson* did not decide the issues it raised on its own, the statement regarding a hypothetical fraudulent transfer action is merely dicta and without any precedential value.

Debtor also relies on *CareerCom Corp. v. U.S. Dep't of Educ.* (*In re CareerCom Corp.*), 215 B.R. 674 (Bankr. M.D. Pa. 1997) and *Official Comm. of Unsecured Creditors v. Florida* (*In re Tower Envtl., Inc.*), 260 B.R. 213 (Bankr. M.D. Fla. 1998).  In *In re CareerCom Corp.*, the court held that the debtor's cause of action against the U.S. Department of Education under 11 U.S.C. § 548 failed because the debtor's payment of fines and penalties allowed the debtor to receive $3.3 million in grants.  "No legal argument can refute the fact that CareerCom and all of its subsidiaries paid out $78,900.17 in fines, in consideration of which they received some $3.3 million in grants." *In re CareerCom Corp.*, 215 B.R. at 678.  In *In re Tower Environmental, Inc.*, 260 B.R. at 224-26, the court held that the payment of restitution as part of a criminal plea agreement could not be avoided as a fraudulent transfer under 11 U.S.C. § 548(a)(2).

None of these cases provide support for Debtor's argument that a payment which is applied to a penalty that is not compensation for actual pecuniary loss may be avoided as a fraudulent transfer.  To the contrary, the cases hold that the payment of a fine or penalty is not an avoidable transfer; regardless of whether the penalty is a noncompensatory penalty.

The only case which directly addresses the issue of whether a payment of tax penalties may be avoided as a fraudulent transfer is *Lynn v. Comm'r* (*In re Randazzo, Inc.*), 34 B.R. 76 (Bankr. N.D. Tex. 1983).  In *Randazzo*, the trustee sought recovery of tax penalties paid prepetition by the debtor, a clothing manufacturer, as fraudulent conveyances under § 67d(2) of the Bankruptcy Act of 1898 ("the Act"), as amended.  The IRS moved for summary judgment and established by affidavit that the debtor failed to pay certain taxes, that a computer was used to calculate and assess tax penalties against the debtor, and that the debtor voluntarily paid the penalties after demand was made for payment by the IRS.

15

The trustee seeking to recover the penalty payments in *Randazzo* asserted that debtor did not receive "fair consideration" in exchange for its penalty payment because the IRS's claim for tax penalties would have been disallowed under the Act had it remained unpaid at the time the debtor filed its petition, thereby rendering it valueless. The court rejected this argument stating:

> The critical time for determining the fairness of the consideration under § 67d(1)(e) of the Act is at the time the transfer is made. Neither subsequent depreciation nor appreciation in the value of the consideration given affects the question of its original fairness. Section 67d(1)(e) specifies that the satisfaction of an antecedent debt constitutes "fair equivalent" value. Valued at the time of the transfer [prepetition payment of the tax penalty], the IRS's forgiving Debtor's indebtedness in exchange for receipt of $1,129.11 is found to be fair equivalent value.

*Id*. at 78 (internal citations omitted).

This Panel concurs with the holding in *Randazzo*. Debtor's prepetition payment of the penalty portion of its tax liability reduced the total liability on its debt to the IRS. Debtor not only received "reasonably equivalent value" for the payment, he received "equivalent value" due to the dollar for dollar reduction of its liability.

Debtor also argues that because the tax penalties are noncompensatory in nature, they are purely punitive. Debtor then argues that because the penalties are punitive, the bankruptcy court should avoid the prepetition payment on the penalty portion of the tax. There is no legal authority to support this argument.[8] Tax penalties ARE punitive in nature. *See In re Manchester Lakes Assocs.*, 117 B.R. 221, 225 (Bankr. E.D. Va. 1990) (the purpose of a tax penalty is "to punish those who fail to abide by the taxing structure, and to deter those who might be inclines to avoid [a] tax payment.") (citation omitted). Under § 6201(a) of the Internal Revenue Code, if a taxpayer fails to voluntarily comply with the Internal Revenue Code, the IRS is authorized to assess an appropriate

---

[8]Indeed, in *United States v. Noland*, 517 U.S. 535, 116 S. Ct. 1524 (1996), the Supreme Court unanimously rejected the argument that the very nature of tax penalties as penalties is enough to make them susceptible to equitable subordination under the Bankruptcy Code.

penalty.[9]   The ability to assess a penalty is an essential part of the Internal Revenue Code; noncompliant taxpayers are required to pay more than compliant taxpayers.  While the penalty is punitive in nature, the penalty portion of a tax liability is the cost of noncompliance.  In the context of the Internal Revenue Code, the penalty portion of the tax has "value," and the fact that a penalty may be characterized as "noncompensatory" does not negate that value.

The Panel agrees with the bankruptcy court's concern that deciding this case in favor of Debtor would create an "enormous disruption" and open a "Pandora's box" of litigation seeking the recovery of "all sorts of things that are quite common in bankruptcy cases."   Such litigation places into question "every noncompensatory fine or penalty of any sort that had ever been paid during a fraudulent conveyance period . . . ."  The bankruptcy court explained that:

> They [Congress] haven't seen fit to address that [penalties] in the fraudulent conveyance area.  And I conclude from that the opposite of what the debtor argues.  And it is that it had never occurred to anyone that noncompensatory penalties were fraudulent conveyances, and so no one saw legislative reason to create an exception or a special case for that.
>
> And I would be creating the need for that legislation if I were to hold that noncompensatory legitimate penalties paid by a debtor during a period of insolvency prior to bankruptcy are fraudulent conveyances. And I decline to go there.

(Transcript of hearing, Jan. 11, 2011, at 39.)  The Panel also declines to find that prepetition noncompensatory penalty payments made to the IRS constitute fraudulent transfers under 11 U.S.C. § 548.  There is no legal authority to support such a conclusion.

---

[9]Section 6201(a) of the Internal Revenue Code states that "[t]he Secretary is authorized and required to make the inquiries, determinations, and assessments of all *taxes* (*including* interest, additional amounts, additions to the tax, and *assessable penalties*) imposed by this title . . . ." (emphasis added).

5.	<u>It was appropriate to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6) because Debtor's complaint failed to state a claim for a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(B) and Tenn. Code Ann. § 66-3-301.</u>

Debtor argues that the bankruptcy court, rather than dismiss the complaint under Rule 12(b)(6), should have conducted a fact-finding hearing and considered all the facts and circumstances of the case. Debtor fails to explain what facts the court failed to consider; Debtor's sole argument is that it failed to receive a benefit or "value" when its prepetition voluntary payment was applied to the penalty portion of its tax liability. The Panel notes that this is not a case where the debtor is claiming that the penalties were wrongfully assessed and were not due, or that penalties that were paid were due from another entity, or even that the penalties were fraudulent. These issues might give rise to questions of fact requiring an evidentiary hearing. Debtor does not state a single fact in dispute. Rather, Debtor analogizes its case (payment on a statutory obligation) to a case where a debtor makes payments for goods and services. Certainly when a debtor makes a transfer in payment of goods and services received, there may be a fact question as to whether the debtor received fair value. No such fact question exists where a debtor's prepetition payment to the IRS results in a dollar-for-dollar reduction in the debtor's total debt owed to the IRS.

6.	<u>Debtor's motion for summary judgment</u>

The Debtor assigns as an issue for review whether its motion for summary judgment should have been granted in full. However, that portion of the bankruptcy court's order which denied the Debtor's motion for summary judgment, in part, is not a final, appealable order. *See Rabin v. Shanker* (*In re Shanker*), No. 05-8085, 2006 WL 1520082, at *9 n.9 (B.A.P. 6th Cir. June 5, 2006) (unpub.) (order denying summary judgment is not a final, appealable order); *Siaca v. DCC Operating, Inc.* (*In re Olympic Mills Corp.*), 333 B.R. 540, 547 (B.A.P. 1st Cir. 2005) (order granting partial summary judgment is not a final order). Therefore, the Panel does not have jurisdiction to address the court's decision on the motion for summary judgment.

18

**CONCLUSION**

For the reasons stated above, the Panel affirms the order of the bankruptcy court dismissing the Debtor's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).